JESSIE SASSER V. THE STATE.

No. 3067.   Decided April 15, 1914.

Rehearing denied May 13, 1914.

**1.—Local Option—Election—Law in Force—Contest—Nunc Pro Tunc.**

Where defendant was charged with a violation of the local option law in April, 1913, and the evidence showed that a local option election was held in September, 1910, and the record disclosed that the result of the election was published in a newspaper showing that the same was carried, for prohibition, etc., by the county judge, for the length of time required by law, the defendant could not attack the order declaring the result of the election as insufficient three years after said election, but could only attack such election in a direct proceeding within thirty days after such result had been declared, and not thereafter, and could not raise this issue during the trial. Following Evans v. State, 55 Texas Crim. Rep., 450, and other cases, and where the election was in fact held putting prohibition in effect, an order thereof could have been entered nunc pro tunc. Following Crockett v. State, 40 Texas Crim. Rep., 173. Davidson, Judge, dissenting.

**2—Same—Evidence—Bootlegger—General Reputation.**

While it may not have been permissible for the witness to have answered the question as he did, yet under the facts in this case, it was permissible to ask him if he knew the reputation of defendant as a bootlegger of whisky in prohibition territory, etc., although he could not testify as to what others said to him. Davidson, Judge, dissenting.

**3.—Same—Evidence—Co-defendant—Remarks by District Attorney.**

Upon trial of a violation of the local option law, the court should not have permitted the district attorney to state in the presence and hearing of the jury that he was going to dismiss the case against the co-defendant because he did not believe he sold any whisky, and then introduce him as a witness for the State, as such dismissal should have been made in writing and according to law with the approval of the court.

Appeal from the District Court of Marion. Tried below before the Hon. H. F. Oneal.

Appeal from a conviction of a violation of the local option law; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*T. D. Rowell,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of violating the local option law, and his punishment assessed at one year in the penitentiary.

After the election is said to have been held the Commissioners Court met to declare the result of the election. The order declaring the result is as follows: "October 8, 1910. Ordered by the court, that the election for local option for precinct No. 5, the same was this day tabulated by the court, as follows, towit: for prohibition, 105; against prohibition, none. Said election occurred September 24, 1910." The above is recited from the bill of exceptions. This is all of the order shown by the bill of exceptions and statement of facts both, with reference to the order of the court declaring the result of the election. When this was offered various and sundry and divers objections were urged to its introduction, which we deem unnecessary to state. The objection covered every possible phase. The statute, article 5721, Revised Civil Statutes, reads as follows: "Said court shall hold a special session on the eleventh day after the holding of said election, or as soon thereafter as practicable, for the purpose of opening the polls and counting the votes; and, if a majority of the votes are 'For prohibition,' said court shall immediately make an order declaring the result of said vote, and absolutely prohibiting the sale of intoxicating liquors within the prescribed limits, except for the purposes and under the regulations specified in this title, until such time as the qualified voters therein may at a legal election held for that purpose by a majority vote decide otherwise; and the order thus made shall be held to be prima facie evidence that all the provisions of law have been complied with in giving notice of and holding said election, and in counting and returning the votes and declaring the result thereof." Then follows article 5722, which provides that the order, after properly being entered, shall be published for four successive weeks in some newspaper, or in the absence of a newspaper in the county, then by posting copies for said length of time. An inspection of article 5721 shows there was no order entered in this case declaring the result and putting prohibition in force as provided by the statute. There is simply a tabulation or statement of the votes as being favorable to prohibition. There was no order of the court following this as the statute requires. The objections should have been sustained, and the order excluded.

Another bill was reserved to the publication by the judge, among other things, because there had been no legally declared result, and that the publication was not authorized until the proper order had been entered declaring the result. It is unnecessary to discuss this question. The basis of this publication was the proper order declaring the result of the election. For authorities on the first proposition see Branch's Crim. Law, sec. 550, and the statute above quoted. The contest provided by article 5728, is only authorized after the proper order declaring the result has been made of record, and the election has been declared to be in force by the proper authorities, therefore, that question can not arise in the case. The time for contesting the election had not arisen, and that phase of the law can not be applied in this case. There is nothing to

contest until the result has been declared and proper order entered as contemplated and required by the statute. The trial judge seems to have taken the same view of it as shown by the bill of exceptions to the effect that when objection was made to the introduction of the ·order undertaking to declare the result of the election, the court stated from the bench he really believed the exception to the introduction of the order was well taken, yet he permitted it to go to the jury. We are of opinion that the trial judge was correct in stating that the law was not in effect, and instead of permitting it to go to the jury, he should have excluded it.

Another bill recites that when the State introduced the witness Welborne, who was indicted also for making the same sale of liquor for which defendant was being prosecuted, and which indictment was then pending on the court docket, the district attorney stated, in the presence and hearing of the jury, as follows: "I am going to dismiss the case against this man because I don't believe Mr. Welborne sold any whisky. I have looked into and I don't believe he sold any whisky." Exception was taken to this remark. We are of opinion that this should not have occurred in the presence and hearing of the jury. Welborne was indicted for selling the same whisky, and the belief of the district attorney in dismissing the case against him, when he tendered him as a witness, should not have gone to the jury. The belief of the district attorney, or his action in dismissing this case, was not a matter for the jury, but for the court alone, and if the district attorney saw proper to dismiss the prosecution against Welborne, it should have been done in writing and his reasons stated in writing subject to the approval of the court. If the court approved it, then the indictment or prosecution could have been dismissed. See White's Ann. Penal Code, secs. 37, 630 and 709. These articles are the same in the Revised Statutes of 1911; the numbering, however, is different from what it is in White's Ann. Penal Code. Upon another trial this matter should not occur.

Another bill recites that M. C. Stallcup, justice of the peace in precinct No. 5, in which it is alleged this sale occurred, was called as a witness for the State. While upon the stand he was asked the question: "Do you know what defendant's reputation is in the community in which he lives, on the question of whether or not he is a bootlegger of liquor," to which the witness answered: "I have heard that he sold whisky before this trouble. I heard a year or two back that Jessie Sasser was selling whisky; those people told me they believed he was selling whisky." Objection was urged to this testimony. On the question of reputation we do not believe this testimony was admissible as to what people told witness they believed about it. What people believed about his selling whisky would not be admissible against appellant. We are of opinion this testimony, under the circumstances and manner detailed in this bill of exceptions, should not have been permitted to go to the jury. In view of the fact that he was charged with selling whisky what the people believed about his being a bootlegger or was selling whisky, may have influenced the jury to determine this question adversely to appellant.

Matters of that sort become more or less important, according to the facts of the case. Appellant's evidence placed it beyond his power to have been guilty. He proved a clear case of alibi by several witnesses, who show that he could not have been guilty. The sale occurred at night, and he had to be identified at night, and he denies his presence and the entire transaction. Welborne and two or three others had some whisky independent of the bottle supposed to have been bought from defendant, and with which they became very much intoxicated, and spent the night in reveling. As this record is presented, we do not believe that this conviction ought to stand, and that these matters discussed are erroneous.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied May 13, 1914.—Reporter.]

PRENDERGAST, Presiding Judge, and HARPER, Judge.—Being unable to concur in that part of the opinion holding that prohibition is not in force in precinct No. 5 in Marion County, we will state our reasons for so holding. The record discloses that the Commissioners Court of the county on September 5, 1910, ordered an election to be held September 24, 1910; that in accordance with said order the election was held on that day, and thereafter the Commissioners Court met and tabulated the returns, and declared the result showing that the vote was unanimous for prohibiting the sale of intoxicating liquors, being 105 for and none against. The record further discloses that the following publication was had in the Jefferson Jimplecute:

"Order declaring result of local option election held in and for justice's precinct No. 5 of Marion County, Texas, on September 24, A. D. 1910.

"Whereas, an election was duly and legally petitioned for and ordered to determine whether or not the sale of intoxicating liquors should be prohibited in justice precinct No. 5 of Marion County, described and bounded as follows, towit: (See original boundary in Commissioners Court records.)

"And, whereas, said election was by the Honorable Commissioners Court of said county, on September 5, 1910, duly and legally ordered and held on Saturday, September 24, A. D. 1910; and, whereas, the result of said election were duly made to said Commissioners Court, and were duly opened and counted on the 8th day of October, 1910, and it appearing to the court that a majority of the votes cast at said election held in said precinct on the day aforesaid were for and in favor of prohibition, it is therefore now ordered by the court that the sale of intoxicating liquors within the limits of said justice precinct No. 5 of Marion County, Texas, as heretofore defined by metes and bounds, be and the same is hereby absolutely prohibited, except for the purposes and under the regulations specified by the law, title 69, art. 3385 of the Local Option Laws of Texas, until such time as the qualified voters of said precinct may by a majority vote, otherwise decide. The total number of votes cast at said election was 105. The number for prohi-

bition was 105. The number against prohibition was none. It is hereby declared by this court that the result of said election held on September 24, 1910, is that prohibition has carried in said precinct No. 5, by a majority of 105 votes.

"It is further ordered that this order declaring the result of said election shall be published for four successive weeks in some newspaper published in Marion County, Texas, to be selected by the County Judge of Marion County, Texas, for that purpose.

"It is further ordered that the sale of intoxicating liquors, except as hereinbefore mentioned, within the above described justice precinct No. 5, of Marion County, Texas, shall be absolutely prohibited, and that said prohibition shall begin and take effect immediately, and shall be enforceable from and after the date of the last aforesaid publication of this order.

"R. A. Loomis,<br>"County Judge, Marion County, Texas."

It further appears that this publication was made in the paper selected by the county judge, and for the length of time required by law. It apparently appears that more than three years after the election had been held and result thereof declared, for the first time the contention is made that the order declaring the result is insufficient in law to put prohibition in force, as the minutes of the court do not specifically show that in declaring the result they at that time entered an order prohibiting the sale of intoxicants, although the publication shows such an order was made. That is, though it appears that such an order was made, the failure of the clerk to enroll it on the minute book prevents prohibition going into effect until he does so enroll, and another publication had. We are frank to admit that the decisions of this court rendered prior to 1907 would support such contention, and this was the reason for the Legislature passing an Act that unless a contest of the election is instituted *"within thirty days after the result has been declared"* it shall be conclusively presumed that said election as held and the result thereof declared are in all respects valid and binding upon all the courts. (Art. 5728, Rev. Stats.) And in this article it is provided that the District Court shall have jurisdiction to try and determine all matters connected with said election, including the petition for the election and all *proceedings and orders relating thereto, embracing final count and declaration and publication of result putting local option into effect,* etc. So it is thus seen that the Legislature provided that all matters relating to the sufficiency of any of these steps must be contested within thirty days after the court has declared the result, and if it is not done the courts must conclusively presume that all necessary legal steps were taken. If one three years after the result has been declared can contest the sufficiency of the order declaring the result and prohibiting the sale, then why not contest the sufficiency of the petition for the election, the sufficiency of the order ordering the election, the fact that the notice had

not been posted, or any other step provided in the law? This law was intended to put an end to all these matters after the lapse of time provided for the contest, and it has been so held in an unbroken line of decisions by this court since the passage of the Act.

This court, in the case of Evans v. State, 55 Texas Crim. Rep., 450, held that this Act of the Thirtieth Legislature, regulating the contest of local option elections and providing for the conclusiveness thereof, was constitutional, and "it follows therefore that the court did not err in refusing to permit appellant, after the expiration of sixty days, to introduce evidence going to show irregularities or defects in the initiatory steps necessary to place local option into effect. It was proper for the court to have the county attorney to introduce sufficient number of the orders of the Commissioners Court to show that the county had adopted local option. It was also proper, as stated, to refuse to permit appellant to contest the validity of said orders after the expiration of the sixty days."

In Doyle v. State, 59 Texas Crim. Rep., 60, 127 S. W. Rep., 815, it was held: "It is contended, among other things, that the precedent steps necessary to put local option in force in Johnson County had not been complied with, and that for many reasons, urged in bills of exception and insisted on in brief of counsel, said election was invalid and nugatory. Whatever we might conclude in respect to these several matters, in the absence of the statute passed by the Thirtieth Legislature (Acts 30th Leg., c. 8), requiring contests to be made of local option elections theretofore or to be thereafter held, it is sufficient to say that, in the absence of a contest, we must and shall assume that the judgment and decree putting local option in force and the proclamation of the county judge had the effect to institute the law in that county, and that this presumption and conclusion are conclusive on us and on appellant."

In Harrymon v. State, 53 Texas Crim. Rep., 474, it was held, "Where upon trial of a violation of the local option law it appeared that the publication was made as provided by law, the court correctly charged the jury that the sale of intoxicating liquors was at the time prohibited in said county."

In Alexander v. State, 53 Texas Crim. Rep., 504, it was held: "Various objections to the orders of the Commissioners Court are in the record, but under an Act of the Thirtieth Legislature that went into effect August 11, 1907, which provides that contests of elections where the local option law was in force at the time the act was passed should be contested within sixty days, none of the objections to the orders can be considered. The record shows there was no civil contest of the local option law. For a discussion of this matter see Wilson v. State, 107 S. W. Rep., 818; Hardy v. State, 52 Texas Crim. Rep., 420, 107 S. W. Rep., 547."

In the case of Ex parte Thulemeyer, 56 Texas Crim. Rep., 337, where it was contended that no order appeared on the minutes of the Commissioners Court showing a creation of the justice precinct in which it was

alleged that an election had been held and prohibition had been adopted, it was held that his remedy was by contest of the election under the above provisions of the statute, and the question could not be inquired into on habeas corpus.

In the Jerue case, 57 Texas Crim. Rep., 213, it was held: "The other question relates to the supposed invalidity of the local option election under which appellant was sought to be held, for the reason, in substance, that the notice of the election was not completed and published in the manner required by law. Since the passage of the Act of the Thirtieth Legislature, in respect to contests of local option elections and the presumption of validity, in the absence of such contest, this point is no longer available to appellant."

In the case of Wesley v. State, 57 Texas Crim. Rep., 277, it was held: "Many of the questions raised on the appeal relate to the sufficiency of the orders, judgments and decrees of the Commissioners Court of Howard County putting local option into effect. Since there was no contest as provided by the Act of the Thirtieth Legislature, these matters can not be considered by us, but we must assume and hold, as the court below did, that the law was in all respects regular and valid." See also Coleman v. State, 53 Texas Crim. Rep., 578, 112 S. W. Rep., 1072; Gipson v. State, 58 Texas Crim. Rep., 403; Wilson v. State, 107 S. W. Rep., 818; Hardy v. State, 52 Texas Crim. Rep., 420, 107 S. W. Rep., 547; Romero v. State, 56 Texas Crim. Rep., 435, 120 S. W. Rep., 859. Many other cases might be cited in which it is held that after the lapse of time in which a contest may be filed, no question can be raised as to the sufficiency of the petition, the sufficiency of the order ordering the election, or any other order made by the court, but we do not deem it necessary to do so, and will only add that in no event would this render invalid the election, but if in fact the order putting in effect prohibition in that precinct is not of record in the minutes of the court, the court can now enter up an order in its minutes so declaring, and no other election would be necessary. Crockett v. State, 40 Texas Crim. Rep., 173.

Another matter we would mention is that while it was not permissible for Judge Stallcup to answer the question as he did, yet under the facts in this case it was permissible to ask him if he knew the reputation of appellant as a bootlegger of whisky in prohibition territory where he lived, and if he answered that he knew it, it would then be permissible to be asked if it was good or bad, and the witness answer good or bad as the facts authorized, but on direct examination he could not tell what others had said to him.